**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THAYER INTERACTIVE GROUP LLC,

Plaintiff,

v.

PC SPECIALISTS, INC.,

Defendant.

Civil Action No. 1:05CV01503 (JR)

**DEFENDANT PC SPECIALISTS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

Defendant PC Specialists, Inc. hereby moves to dismiss Plaintiff's Declaratory Judgment Complaint filed pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* In the alternative, Defendant PC Specialists, Inc. hereby moves to transfer venue of this matter to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. § 1404(a).

In support of this Motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities, the Declaration of Peter K. Hahn and the exhibits attached thereto, the Declaration of Thomas C. Janecek and the Declaration of Paul Corsinita.

Respectfully submitted,

/S/

Roberta Horton (D.C. Bar #413577)
Leslie M. Hill (D.C. Bar #476008)
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5000

*Of Counsel:*

Callie A. Bjurstrom, Esq.
Michelle A. Herrera, Esq.
LUCE, FORWARD, HAMILTON & SCRIPPS, LLP
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Telephone: (619) 236-1414

Date: December 2, 2005

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THAYER INTERACTIVE GROUP LLC,<br>Plaintiff,<br>v.<br>PC SPECIALISTS, INC.,<br>Defendant. | Civil Action No. 1:05CV01503 (JR) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT PC SPECIALISTS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

A. The Parties ..... 1

B. TIG GLOBAL'S Acts of Trademark Infringement and Race to the Courthouse ..... 3

C. TIG's Trademark Infringement Complaint Filed in the Southern District of California ..... 4

III. AUTHORITY AND ARGUMENT ..... 5

A. The Court Should Exercise its Discretionary Power to Dismiss TIG GLOBAL's Pre-Emptive Declaratory Judgment Complaint ..... 5

B. In The Alternative, Venue Should be Transferred to the Southern District of California Pursuant to 28 U.S.C. § 1404(a) ..... 8

1. The Private Interest Factors Weigh in Favor of Transfer to the Southern District of California ..... 10

2. The Public Interest Factors Weigh in Favor of Transfer to the Southern District of California ..... 13

IV. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page**

CASES

*American Greiner Electronic, Inc. v. Establissements Henry-Le Paute, S.A.*, 174 F. Supp. 918 (D.D.C. 1959) ........ 6

*BASF Corp. v. Symington*, 50 F.3d 555 (8th Cir. 1995) ........ 7

*Colony Ins. Co. v. Holley*, 2002 U.S. Dist. LEXIS 22889 at *2 (E.D. La. Nov. 27, 2002) ........ 5

*Envirometrics Software v. Georgia-Pacific Corp.*, 1997 U.S. Dist. LEXIS 17659 at *11 (D. Del. Nov. 4, 1997) ........ 7

*Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1 (D.D.C. 1996) ........ 11, 14

*Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3 (D.D.C. 1996) ........ 10

*Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28 (D.D.C. 2004) ........ 10, 12, 13, 14

* *Tempco Elec. Heather Corp. v. Omega Eng'g*, 819 F.2d 746 (7th Cir. 1987) ........ 5, 6, 7

*Travelers Ins. Co. v. Davis*, 490 F.2d 536 (3rd Cir. 1974) ........ 7

* *Trippe Mfg. Co. v. American Power Conservation Corp.*, 46 F.3d 624 (7th Cir. 1995) ........ 5, 6

* *Trout Unlimited v. United States Dept. of Agric.*, 944 F. Supp. 13 (D.D.C. 1996) ........ 8, 9, 10, 13, 14

* *Van Dusen v. Barrack*, 376 U.S. 612 (1964) ........ 9

* *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633 (2nd Cir. 1956) ........ 11, 14

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ........ 5, 7

STATUTES

15 U.S.C. § 1114 ........ 4

15 U.S.C. § 1125(a) ........ 4

15 U.S.C. § 1125(c)(1) ........ 4

15 U.S.C. § 1125(d) ........................................ 4

28 U.S.C. § 1391(b)(1) ........................................ 8

28 U.S.C. § 1391(c) ........................................ 8

28 U.S.C. § 1404(a) ........................................ 1, 4, 8, 9, 15

28 U.S.C. § 2201 ........................................ 5

Cal. Bus. & Prof. Code § 17200 ........................................ 4

Fed. R. Civ. P. 45 ........................................ 12

## I. INTRODUCTION

Plaintiff's declaratory judgment Complaint is a transparent attempt to secure a home court advantage for a trademark infringement suit that Plaintiff fully anticipated and that should properly be heard in the forum where the trademark holder, the Defendant in this case, resides. Plaintiff filed its Complaint a mere nine days after receiving a letter from Defendant placing it on notice of its infringing conduct, and then hid the pendency of this lawsuit from Defendant while simultaneously initiating and pursuing what Defendant believed were good faith settlement discussions over the course of the next three months. Those discussions abruptly ended when Plaintiff served Defendant with the Complaint.

The Declaratory Judgment Act was not established to provide an infringer with a vehicle to secure its chosen forum in anticipation of a trademark infringement action. The law is clear that pre-emptive strike suits, such as this, should be dismissed where, as here, the trademark owner has filed an infringement action where it resides, and that will resolve all disputed issues between the parties. Plaintiff's Complaint should be dismissed on this basis alone.

In the alternative, this Court has the discretion under 28 U.S.C. § 1404(a) to transfer this action to the Southern District of California. The convenience of the parties and witnesses and the interests of justice warrant a transfer of venue in this case.

## II. STATEMENT OF FACTS

### A. The Parties

Defendant PC Specialists, Inc. is a California corporation headquartered in San Diego, California. Defendant has been doing business exclusively and continuously under the names "TIG" or "Technology Integration Group" for the past eleven years (hereinafter, "TIG"). (*See* Declaration of Thomas C. Janecek filed concurrently herewith ("Janecek Decl."), ¶ 3.) TIG is a full service technology integration goods and services provider that is primarily engaged in the business of selling, installing and servicing large scale computer systems. TIG also provides the

ancillary products and services associated with those systems including the following: system design; system installation; network management; network security; web site development; web site hosting; data warehousing; and enterprise storage. (*Id.*, ¶ 2.) Over the past five years, TIG has assisted over two hundred (200) customers in the hospitality industry, many of these businesses are hotels, motels and resorts of all sizes. The vast majority of these customers are located on the West Coast (primarily California) and Hawaii. (*Id.*, ¶ 5.)

TIG is the registered owner of the service marks "TIG" (United States Service Mark No. 2,720,478) and "TECHNOLOGY INTEGRATION GROUP" (United States Service Mark No. 2,391,057) (hereinafter collectively referred to as the "TIG MARKS"). (Janecek Decl., ¶ 4.) TIG has used the TIG MARKS continuously and consistently for the past eleven years in connection with the sale, marketing and distribution of its goods and services. (*Id.*, ¶ 3.)

Plaintiff Thayer Interactive Group LLC is a Delaware limited liability company with a principal place of business in Washington, D.C. Plaintiff just recently began doing business under the name "TIG GLOBAL" (hereinafter, "TIG GLOBAL"). (*See* TIG GLOBAL's Declaratory Judgment Complaint, ¶¶ 5, 10, indicating it began using the "TIG GLOBAL" mark in October 2004.) TIG GLOBAL's Complaint alleges that it is "an Internet marketing firm that is the leading provider of web presence management services to the hospitality industry." (*Id.*, ¶ 7.)

According to TIG GLOBAL's website, located at "www.tigglobal.com," TIG GLOBAL is in the business of providing goods and services similar to those provided by TIG, including web site design, web site development and maintenance, interactive web site marketing software programs, internet search engine systems and programs, e-mail marketing systems and data analysis systems. TIG GLOBAL offers its goods and services "in all major North American markets as well as Europe, Mexico and the Caribbean." (Complaint, ¶ 8.)

**B. TIG GLOBAL'S Acts of Trademark Infringement and Race to the Courthouse**

In July 2005, TIG became aware that Plaintiff was using the mark "TIG Global" as its company name and as a service mark, and that it was operating a web site under the domain name "www.tigglobal.com." (Janecek Decl., ¶ 4.) What prompted TIG's discovery was a report from one of its existing customers in San Diego County who had seen an advertisement for TIG Global in a hospitality industry trade magazine, and questioned whether TIG Global was affiliated with TIG. (*See* Declaration of Paul Corsinita filed concurrently herewith ("Corsinita Decl.").)

On July 20, 2005, counsel for TIG wrote to TIG GLOBAL notifying the company of its infringement of TIG's registered service marks, and demanding that TIG GLOBAL immediately cease and desist its infringing conduct. (*See* Exhibit A to the Declaration of Peter Hahn filed concurrently herewith ("Hahn Decl.").) Shortly thereafter, TIG GLOBAL contacted TIG directly to discuss the issues raised in the letter, and assured TIG that TIG GLOBAL believed an amicable resolution could be reached without resorting to litigation. TIG GLOBAL followed up with a letter confirming these representations on August 2, 2005. (*See* Exhibit B to Hahn Decl.)

What TIG GLOBAL failed to mention, however, was that on July 29, 2005, just a few days after receiving TIG's letter, TIG GLOBAL raced to this courthouse and filed this action for a declaration of non-infringement pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. TIG GLOBAL remained silent about the filing of its Complaint for the next three months while TIG believed the parties were working in good faith toward a resolution of their dispute. (*See* Exhibits C and D to Hahn Declaration.) On October 31, 2005, TIG GLOBAL specifically expressed a willingness to further "pursue settlement discussions." (*See* Exhibit D to Hahn Decl.) Two days later, TIG GLOBAL served TIG with this Complaint. (Janecek Decl., ¶ 4.)

### C. TIG's Trademark Infringement Complaint Filed in the Southern District of California

On December 1, 2005, TIG filed a Complaint for trademark infringement against TIG GLOBAL in the Southern District of California, Case No. 05-CV-2198 B(JMA), in response to TIG GLOBAL's clear infringement of TIG's rights in its registered service mark "TIG." TIG has alleged the following causes of action against TIG GLOBAL: (1) Trademark Infringement – 15 U.S.C. § 1114; (2) False Designation of Origin and Federal Unfair Competition – 15 U.S.C. § 1125(a); (3) Dilution – 15 U.S.C. § 1125(c)(1); (4) Federal Common Law Trademark Infringement; (5) Cybersquatting - 15 U.S.C. § 1125(d); and (6) Unfair Competition– Cal. Bus. & Prof. Code § 17200. A true and correct copy of TIG's Complaint is attached to the Hahn Declaration as Exhibit E.

For the reasons set forth below, TIG GLOBAL's declaratory judgment Complaint pending in this Court should be dismissed. The Court has inherent and broad discretionary powers to dismiss a Complaint brought under the Declaratory Judgment Act where the respective rights of the parties will be adjudicated in an action pending elsewhere. A discretionary dismissal of this action is particularly appropriate given the infringing party's race to the courthouse and feigned interest in resolving this dispute in an effort to deprive TIG of its choice of forum for its infringement action.

In the alternative, this Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer this case to the Southern District of California where it can be consolidated with the action filed by TIG in that district. The convenience of the parties and witnesses, and the interests of justice clearly warrant that this dispute be heard in the district where the trademark owner resides, where the witnesses to and records concerning the registration and usage of the marks at issue are located, and where the majority of the consumers that have been confused and/or are likely to be confused reside.

## III. AUTHORITY AND ARGUMENT

### A. The Court Should Exercise its Discretionary Power to Dismiss TIG GLOBAL's Pre-Emptive Declaratory Judgment Complaint

It is well established that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdiction." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Exercising this discretion, district courts can dismiss a declaratory judgment action at virtually any stage of the proceedings. *Id.* at 288. *See also Colony Ins. Co. v. Holley*, 2002 U.S. Dist. LEXIS 22889 at *2 (E.D. La. Nov. 27, 2002) (courts have broad discretion to dismiss a declaratory judgment action, and may do so *sua sponte*).

In trademark cases, the dismissal of an action seeking a declaration of non-infringement is especially warranted where an infringement action is subsequently filed by the trademark holder in an alternative venue that will fully adjudicate the respective rights of the parties. For example, in *Tempco Elec. Heather Corp. v. Omega Eng'g,* 819 F.2d 746 (7th Cir. 1987), upon receipt of a cease and desist letter an alleged trademark infringer filed a declaratory action for non-infringement under 28 U.S.C. § 2201 in federal court in Illinois, the company's home forum. Four days later, the trademark holder filed an infringement action in federal court in Connecticut, its own home forum. *Id.* at 747. The court dismissed the declaratory judgment action and held: "Where . . . the declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed four days later." *Id.* at 749.

The court's decision in *Trippe Mfg. Co. v. American Power Conservation Corp.*, 46 F.3d 624 (7th Cir. 1995), is likewise instructive. In *Trippe*, the court dismissed a declaratory action for non-infringement in favor of a trademark infringement action filed by the trademark holder ***three months later*** reasoning that "[a] district court has an ample degree of discretion in deferring to another federal proceeding involving the same parties and issues to avoid duplicative

litigation." *Id.* at 629 (internal citation omitted). *See also American Greiner Electronic, Inc. v. Establissements Henry-Le Paute, S.A.*, 174 F. Supp. 918, 918 (D.D.C. 1959) (in patent case, earlier filed declaratory judgment action dismissed in favor of later filed infringement action because the same issues were involved in each case).

The facts in the present case directly mirror the facts underlying the *Tempco* decision and, in fact, are decidedly more egregious. When TIG became aware of TIG GLOBAL's acts of trademark infringement, TIG promptly sent a cease and desist letter. (*See* Janecek Decl., ¶ 4, and Exhibit A to Hahn Decl.) A few days after receipt of that letter, TIG GLOBAL filed a pre-emptive declaratory judgment action in its home forum and sat on it, saying nothing to TIG and purporting to engage in "good faith" settlement negotiations. (*See* Exhibit B to Hahn Decl.) TIG GLOBAL thus lulled TIG into a false sense of security that the dispute could be resolved short of litigation. Acting in good faith and completely unaware of TIG GLOBAL'S actions, TIG continued to discuss settlement with TIG GLOBAL and to work toward a resolution of its dispute with TIG GLOBAL. A mere ***two days*** after TIG GLOBAL represented in writing that it was interested in further settlement discussions with TIG, the company served its three-month old declaratory judgment Complaint.

TIG has filed a Complaint for trademark infringement and related claims in the Southern District of California. (*See* Exhibit E to Hahn Decl.) Both Complaints seek resolution of the very same issue: Whether TIG GLOBAL's use of the mark "TIG Global" infringes TIG's rights in its registered service marks. Where, as here, a declaratory judgment action for non-infringement is filed in direct anticipation of an infringement suit by the trademark holder that will resolve all of the issues in dispute, the District Court should exercise its discretion to dismiss the declaratory judgment action. Under these circumstances, the declaratory judgment action filed by TIG GLOBAL "would serve no useful purpose." *Tempco*, 819 F.2d at 749.

As the United States Supreme Court has held, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. *See also Tempco*, 819 F.2d at 750 ("The federal declaratory judgment is not a prize to the winner of the race to the courthouse") (internal citations omitted); *BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995) ("[A] suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed") (internal citation omitted).

TIG GLOBAL's Complaint is nothing more than a pre-emptive strike aimed at denying TIG, the natural plaintiff in this dispute, its choice of forum. This is clearly an abuse of the Declaratory Judgment Act, whose purpose is "to afford a new form of relief where needed, not to furnish a new choice of tribunals." *Travelers Ins. Co. v. Davis,* 490 F.2d 536, 543 (3rd Cir. 1974).

Moreover, TIG did not engage in any conduct creating a prolonged period of uncertainty such that relief under the Declaratory Judgment Act became necessary. The purpose of a declaratory judgment action is "to prevent one party from continually accusing the other, to his detriment, without allowing the other to secure an adjudication of his rights by bringing suit." *Tempco*, 819 F.2d at 749. TIG GLOBAL filed this action nine days after TIG's initial cease and desist letter, while simultaneously approaching TIG to discuss settlement. Under these circumstances, declaratory judgment is clearly inappropriate. *See Envirometrics Software v. Georgia-Pacific Corp.*, 1997 U.S. Dist. LEXIS 17659 at *11 (D. Del. Nov. 4, 1997) (declaratory judgment unwarranted where "[the] time frame from notice . . . to lawsuit . . . is insufficient to generate the magnitude of uncertainty and insecurity typically associated with declaratory judgment actions").

For the reasons set forth above, TIG GLOBAL's declaratory judgment action should be dismissed in favor of the trademark infringement action filed by TIG in the Southern District of California. A contrary result would punish TIG for its attempts to resolve this dispute informally and reward TIG GLOBAL for its premature race to the courthouse.

**B. <u>In The Alternative, Venue Should be Transferred to the Southern District of California Pursuant to 28 U.S.C. § 1404(a)</u>**

28 U.S.C. section 1404(a) sets forth the parameters under which a court may transfer a case pending before it to an alternate venue:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The threshold question in the venue transfer analysis in this case, therefore, is whether this action might have originally been filed by TIG GLOBAL in the Southern District of California. *See Trout Unlimited v. United States Dept. of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). This question is easily answered in the affirmative, as venue is proper in any district in which a defendant resides, if all defendants reside in the same district. 28 U.S.C. § 1391(b)(1). TIG, the lone defendant in this action, is headquartered and doing business in San Diego, California, and therefore resides in the Southern District of California. 28 U.S.C. § 1391(c).

As for the next step in the venue transfer analysis, it is well settled that transfer to an alternate venue is warranted in consideration of the convenience of the parties and witnesses and in the interests of justice:

> Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. Thus, as the Court recognized in *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26, 27, the purpose of the section is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." To this end it empowers a district court to transfer

> "any civil action" to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice.

*Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (footnotes omitted).

The District of Columbia has identified several private and public interest factors that courts should consider when determining whether a transfer under Section 1404(a) is warranted. The private interest factors include:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants;
>
> (2) the defendant's choice of forum;
>
> (3) whether the claim arose elsewhere;
>
> (4) the convenience of the parties;
>
> (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and
>
> (6) the ease of access to sources of proof.

*Trout Unlimited*, 944 F. Supp. at 16 (footnotes omitted). The public interest factors, in turn, consist of the following:

> (1) the transferee's familiarity with the governing laws;
>
> (2) the relative congestion of the calendars of the potential transferee and transferor courts; and
>
> (3) the local interest in deciding local controversies at home.

*Trout Unlimited*, 944 F. Supp. at 16 (footnotes omitted).

As set forth below, both the private interest and the public interest factors in this case warrant a transfer to the Southern District of California

1. **The Private Interest Factors Weigh in Favor of Transfer to the Southern District of California**

The first private interest factor, the plaintiff's choice forum, should be accorded little if any weight in this case. The deference normally given to this factor "is mitigated where the plaintiff's choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Kafack v. Primerica Life Ins. Co.*, 934 F. Supp. 3, 6 (D.D.C. 1996) (internal citation omitted). The only connection this trademark infringement dispute has to the District of Columbia is that TIG GLOBAL's principal place of business is purportedly in this district. Residency alone, however, is not a valid reason to defer to the plaintiff's choice of forum. *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 34 (D.D.C. 2004). *Accord, Kafack*, 934 F. Supp. at 7. This is especially true where, as here, transfer is sought to a forum with which the plaintiff has substantial ties, "and where the subject matter of the lawsuit is connected to that state." *Trout Unlimited*, 944 F. Supp. at 17. This Court must be "especially cautious in allowing this case to remain in the District of Columbia" where the plaintiff's choice of forum "has no meaningful ties to or interest in [the] suit." *Id.* at 17.

The defendant's choice of forum, the second factor in the private interest analysis, is far more deserving of deference here. TIG is a California corporation that is headquartered in San Diego, California, which is within the Southern District of California. (Janecek Decl, ¶ 3,) TIG is the registered owner of the trademarks in dispute in this action, and it was TIG that first raised the issue of TIG GLOBAL's acts of infringement by way of a cease and desist letter from TIG's counsel in San Diego to TIG GLOBAL. (*See* Exhibit A to Hahn Decl.) Indeed, it is TIG that is the natural plaintiff in this action and its choice of forum should therefore carry decidedly more weight than TIG GLOBAL's.

Turning to the third factor in this portion of the analysis, the acts of infringement arose and will continue to arise in or near the Southern District of California, not the District of

Columbia. TIG GLOBAL admittedly is in the business of providing Internet and website related services to clients in the hospitality industry throughout North America and beyond. TIG likewise has a significant base of clients in the hospitality industry, the majority of which are in California and Hawaii. (Janecek Decl., ¶ 5.) TIG GLOBAL's acts of infringement were in fact brought to TIG's attention by one of its customers in the Southern District of California. (*See* Corsinita Decl., ¶¶ 1-4.) The confusion as to the source of TIG GLOBAL's goods and services have occurred, and are likely to continue to occur, in or near the Southern District of California. In trademark infringement cases, venue properly lays where the confusion occurs:

> [I]n cases of trade-mark infringement and unfair competition, the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's.

*Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2nd Cir. 1956). *See also Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 5 (D.D.C. 1996) ("In a trademark case, the wrong takes place where confusion is likely to occur"). The "wrong" in this case is taking place primarily in the Southern District of California, not in the District of Columbia.

The convenience of the parties, the fourth factor in the Court's analysis, also weighs in favor of transfer to the Southern District of California. As noted previously, TIG, the owner of the trademarks at issue, is headquartered in the Southern District of California. TIG does very little business in the District of Columbia -- in fact, in 2004 the sales TIG made to customers in the District of Columbia accounted for a mere fraction of a percent of its total sales for that year. (*Id.*, ¶ 7.) TIG has no employees, offices or physical presence of any kind in the District of Columbia. (*Id.*) It would be unduly burdensome and extraordinarily inconvenient for TIG to litigate this dispute on the opposite side of the country. This is especially true here because any

extended absence of TIG's officers who are expected to serve as the company's key witnesses in this case, would significantly disrupt the company's business. (*Id.*, ¶ 8.)

As for the fifth private interest factor, the convenience of potential witnesses in this case supports a transfer to the Southern District of California. TIG's customers that have been and are likely to be confused as to the source of TIG GLOBAL's services, *i.e.* TIG's customers in the hospitality and related industries, are those that are likely to be called as witnesses in this matter. (Janecek Decl., ¶¶ 8-9.) These witnesses are located on the West Coast (primarily California) and in Hawaii. (*Id.*, ¶¶ 5, 9.) Those witnesses are beyond the subpoena power of the District of Columbia and are therefore likely to be unavailable at trial. *See* Fed. R. Civ. P. 45. Even as for those witnesses that might be beyond the subpoena power of the Southern District of California, their proximity to that district makes it more likely that they will voluntarily appear at trial, and will certainly facilitate the deposition process.

Lastly, the sixth and final private interest factor overwhelmingly supports venue in the Southern District of California because that district is where all of the sources of proof are located. This is a trademark infringement action. The registered owner of the trademarks at issue, TIG, is headquartered in San Diego, California, and has been for the past twenty-two years. (Janecek Decl., ¶ 3.) All corporate records regarding the registration and usage of those trademarks is maintained in the Southern District of California. (*Id.*, ¶ 6.) In fact, all of TIG's corporate records are maintained in San Diego. (*Id.*) Moreover, and as mentioned above, all potential witnesses to confusion and potential confusion as to the source of TIG Global's goods and services are located in or near the Southern District of California. Under these circumstances, a transfer to the Southern District of California is appropriate and warranted. *See Schmidt*, 322 F. Supp. 2d at 34 (defendant's motion to transfer to chosen forum granted where the relevant documents, witnesses and defendant's corporate offices were all located with the transferee district).

### 2. <u>**The Public Interest Factors Weigh in Favor of Transfer to the Southern District of California**</u>

Like the private interest factors, each public interest factor in this case warrants a transfer to the Southern District of California. First, this trademark action arises under federal law. (*See* TIG GLOBAL's Complaint, seeking declarations of non-infringement of various provisions of the federal Lanham Act.) The transferee court is a federal court with full familiarity of the governing law. It cannot reasonably be argued that the transferee court lacks the requisite legal acumen to address and resolve the claims in this matter.

Second, at this early stage of the proceedings the case would pose an equal burden on both the transferor and transferee court. TIG GLOBAL's declaratory infringement action in this Court, while filed over four months ago, was only just recently served on TIG. This motion is TIG's first appearance before this Court. No discovery has taken place by either party and the Court has invested relatively little time in the case. Moreover, TIG has already filed a Complaint for trademark infringement in the Southern District of California. (*See* Exhibit E to Hahn Decl.). Under these circumstances, the relative congestion of the calendars of the potential transferee and transferor courts are a virtual non-issue. *See Schmidt*, 322 F. Supp. 2d at 35-36 (venue transferred where case was in its early stages, the transferor court had not familiarized itself with the underlying facts and resolution of the case would not be delayed by transfer); *Trout Unlimited*, 944 F. Supp. at 19 (same).

Lastly, this trademark infringement action clearly arose in the Southern District of California, where the registered owner of the marks at issue is located and where the confusion as to the source of TIG GLOBAL's goods and services has already occurred and is likely to continue to occur. In fact, it was confusion as to the source of TIG GLOBAL's goods and services reported by one of TIG's customers in the Southern District of California that prompted TIG to take action to protect its trademark rights. (*See* Corsinita Decl., ¶¶ 1-4, and Exhibit A to

Hahn Dec.). When the defendant's corporate offices are located in the transferee district, and all operative events occurred in that district, the transferee court has a greater interest in the dispute than the transferor court. *Schmidt*, 322 F. Supp. 2d at 36. *See also Vanity Fair Mills*, 234 F.2d at 639, and *Heroes*, 958 F. Supp. at 5 (in trademark infringement cases, claims arise where the confusion occurs or is likely to occur). "Controversies should be resolved in the locale where they arise." *Trout Unlimited*, 944 F. Supp. at 19. In this case, that locale is the Southern District of California.

## IV. CONCLUSION

TIG GLOBAL's declaratory relief action should be seen for what it is: A pre-emptive strike to secure the forum of its choosing in a case where TIG, the registered owner of the trademarks at issues, is the natural plaintiff whose choice of forum should be given the utmost deference. This is especially true under the circumstances in this case, where TIG GLOBAL rushed to file its action a mere nine days after being notified of its infringing conduct and then feigned interest in settlement discussions with TIG while remaining silent about the pendency lawsuit. The Declaratory Judgment Act was not intended to be abused in this manner. This Court should exercise its discretion to dismiss TIG GLOBAL's Complaint in favor of the trademark infringement Complaint TIG has filed and that is pending in the Southern District of California.

In the alternative, TIG respectfully requests this Court transfer this lawsuit to the Southern District of California pursuant to 28 U.S.C. § 1404(a). As set forth herein, the convenience of the parties and witnesses, the interests of justice, and all of the private and public interest factors relevant to the Court's analysis in this regard weigh in favor of transfer.

Respectfully submitted,

*Of Counsel:*

/ s /

Roberta Horton (D.C. Bar #413577)
Leslie M. Hill (D.C. Bar #476008)
ARNOLD & PORTER LLP
555 12th Street, N.W.
Washington, D.C. 20004
Telephone: (202) 942-5000

Callie A. Bjurstrom, Esq.
Michelle A. Herrera, Esq.
LUCE, FORWARD, HAMILTON & SCRIPPS, LLP
600 West Broadway, Suite 2600
San Diego, CA 92101-3372
Telephone: (619) 236-1414

DATE: December 2, 2005

2133311.1